Edward M. ROBISON; Edward McCaul, Jr.; Lee Van Syckle; Rosemary Hetrick; Bannister Allen, III; Dennis J. Springer, II; Edwin Watt; and Karen Speakman, Plaintiffs,

v.

CANTERBURY VILLAGE, INC., a Pennsylvania corporation; and Thomas J. Reilly, individually and as President of Canterbury Village, Inc., Defendants.

Civ. A. No. 85–1717.

United States District Court, W.D. Pennsylvania.

Jan. 13, 1987.

Grace Harris, Pittsburgh, Pa., for plaintiffs.

ˉEdward P. Zemprelli, Clairton, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

This is an action alleging numerous violations of various constitutional rights seeking declaratory, legal and equitable relief on behalf of former council members and renters against the sole developer/owner and major stockholder of the property which comprises the borough where plaintiffs reside(d). Defendants have filed a motion to dismiss, along with supporting affidavit and brief. Plaintiffs have responded in opposition with affidavits and brief. Discovery has been stayed pending our decision on this motion, and on plaintiffs' motion to dismiss the counterclaim brought by defendants in this action which is also ripe for our consideration. Since evidentiary materials have been submitted, the motions to dismiss will be treated as

motions for summary judgment under F.R. Civ.P. 56. See F.R.Civ.P. 12(b).

### Facts

Canterbury Village, a defendant in this action, is a corporation which was the sole land developer and principal owner of a residential project named Seven Fields, consisting of over 500 acres, and located in Cranberry Township, Butler County, Pennsylvania. Defendant, Thomas Reilly, is the president and major shareholder of Canterbury Village. Seven Fields was approved for incorporation as a borough in October, 1983, and an election of borough officials was held in November of 1983. Plaintiffs in this action were living in the Borough of Seven Fields at the time as tenants, and were elected to serve as council members. Canterbury Village, Inc. continued as landlord of the rental units located in Seven Fields Borough after its incorporation as a borough. Almost all of the residents of the borough are tenants of Canterbury Village, Inc. The corporation provides municiple services to the borough, including the borough's road system, water and sewer systems, as well as police and fire protection.

### Allegations

Plaintiffs allege that the corporation has attempted to control elected borough officials by using its powers under the landlord tenant act to threaten eviction and/or to refuse to renew the lease of any elected official who acted in defiance of Canterbury Village, Inc./Reilly's wishes or policy. The difficulties apparently began when borough officials deviated from the corporation's wishes by adopting a tax structure and budget which differed markedly from that proposed by the corporation and Reilly. Thereafter defendants allegedly instituted a series of intimidating and retaliatory measures against council to coerce or influence them in the exercise of their official duties. Defendants' acts allegedly caused a chilling effect on plaintiffs' exercise of their constitutional or civil rights. As a result of defendants' acts, council members resigned en masse in May, 1984.

Plaintiffs have sued under the following legal theories:

1. violation of First Amendment right of free speech;

2. violation of Ninth Amendment right to serve as public officials and right to have votes count;

3. violation of Fourteenth Amendment—interference with privileges of citizens;

4. eviction or threatened eviction of council members violated equal protection;

5. eviction or threatened eviction violated due process;

6. interference with right to vote (§ 1971(b) and § 1983 of Title 42);

7. violation of 42 U.S.C. § 1973;

8. violation of 42 U.S.C. § 1985; and

9. liability under § 1986 for money damages.

Defendants' Motion to Dismiss advances a number of arguments which may be dispositive. Defendants' first argument is that plaintiffs' have failed to state a claim upon which relief can be based as defendants are a private corporation and a private individual and there is no federal or state action present.

### State Action

Plaintiffs must allege state or federal action to state a claim under nearly all of the 9 counts of the complaint since they involve, either directly or indirectly, Fourteenth Amendment violations and/or § 1983 claims. The requirement of § 1983 that the action be under color of state law has been interpreted to be identical to the state action requirement of the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

No single standard has been developed for determining when private conduct can be considered state action. The question is both factual and legal. We have before us all the facts necessary to our determination, and we give plaintiffs the benefit of all fairly drawn inferences in their favor.

Courts have at times applied various tests to assist in this determination including the "public function" test, "state compulsion" test, "nexus" test and "symbiotic relationship" test.[1]

Plaintiffs argue that the corporation here is like the "company town" in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), where the court found state action, and/or like the factual situation in *Lavoie v. Bigwood*, 457 F.2d 7 (1st Cir.1972), which also resulted in a finding of state action. We find both cases distinguishable.

In *Marsh v. Alabama, criminal convictions and sanctions* were imposed by the state courts pursuant to an Alabama trespass statute on an individual Jehovah Witness for distributing religious literature on what appeared to be a public sidewalk of a company-owned town contrary to the wishes of the town's management. The town and its shopping district were accessible to and freely used by the public in general and there was nothing to distinguish them from any other town and shopping center except for the fact that the property was owned by a private corporation. The court found that the state had enforced the restriction of freedom of the press and religion by the state court's unconstitutional application of a state statute. The case at hand does not involve criminal sanctions, nor does it involve any enforcement or active participation by the state or a state agent. Notices of eviction were apparently either complied with or rescinded and/or leases were not renewed. There is no evidence of court or other state enforcement. Moreover, the property in question in the case at hand, unlike the publicly accessed sidewalk in the business district of Chickasaw, was not built and operated primarily to benefit the public or as an essentially "public function."

In *Lavoie v. Bigwood*, the court reasoned that an ejection action by a private party in retaliation for the exercise of First Amendment rights would not in itself amount to state action, 457 F.2d at 12. However, the *Lavoie* court held that such an ejection action together with the fact that the state had effectively given monopoly power to the landlord, over all the land on which mobile-home tenants could live for a radius of approximately 35 miles of the town of Merrimack, through zoning statute, was sufficient to establish state action. The *Lavoie* court specifically noted that plaintiffs had no other practical living alternatives as other types of housing were not interchangeable. *See also, Lavoie*, 457 F.2d 14, fn. 16. In the case at hand, the state did not give any special support to Canterbury Village whereby it created monopoly power in the corporation in order to further certain of its own governmental policies. *See Lavoie*, 457 F.2d at 13. Rather Canterbury Village's monopoly comes strictly from its own economic power and its decision to create a housing development which it later sought to incorporate as a borough in order to obtain certain financial advantages for itself. There is no showing that the state in any way restricted the housing alternatives of plaintiffs to those available through this landlord in this borough. Rather it appears that plaintiffs freely chose to move into this new commercial development, even before it ceased to be a part of Cranberry Township and became an independent borough.

We do not find sufficient state involvement with this private party to create a finding of state action. For this reason, all claims under the First Amendment as incorporated by the Fourteenth Amendment, under the Fourteenth Amendment and under 42 U.S.C. § 1983 will be dismissed.

### § 1985(3) Claim

 Although certain § 1985 claims may not require state action depending on the nature of the rights involved, *see United Brotherhood of Carpenter & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), we believe that the § 1985 claim here is at-

---

**1.** These tests are discussed more fully by the court in *Martin v. Delaware Law School of Wid-* *ener University*, 625 F.Supp. 1288, 1300–01 (D.Del.1985).

tempting to assert rights which are by definition those legally protected from state interference, and therefore a showing of state action would be necessary to state a § 1985 claim on these facts. There are other flaws in this claim's sufficiency as well. Allegations of a conspiracy between a corporation and its president are insufficient since only one business entity is involved. *See Rice v. President & Fellows of Harvard College,* 663 F.2d 336 (1st Cir. 1981), *cert. den.* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444; *Rheuark v. Shaw,* 477 F.Supp. 897 (N.D.Tex.1979), 628 F.2d 297 (5th Cir.1980), *cert. den.* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365. Further there is clearly no class-based animus or invidious discrimination present on these facts. *Griffin v. Breckinridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). For those reasons, plaintiffs' § 1985 claim(s) will be dismissed.

## § 1971 Claim

■ Plaintiffs' claim that defendants interfered with their right to vote does not state a § 1971 claim as this section has been limited to cases of racial discrimination in voting in federal, state and local elections. *City of Port Arthur v. U.S.,* 517 F.Supp. 987 (D.C.D.C.1981), *aff'd* 459 U.S. 159, 103 S.Ct. 530, 74 L.Ed.2d 334; *Powell v. Power,* 436 F.2d 84 (2d Cir.1970). No racial discrimination is alleged here.

## § 1973b Claim

■ This section prohibits the use of any "test or device" to restrict voters in any state or political subdivision. Plaintiffs allege no use of a voter's test or qualifications as a prerequisite to vote that would discriminate against an identifiable class. *See e.g., U.S. v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978).

## 9th Amendment Claim

■ Plaintiffs assert no facts which would state a cause of action under this Amendment. Plaintiffs served as elected officials of the borough, cast their votes,

elected a budget and tax structure that was contrary to defendants' wishes and voluntarily resigned in protest over defendants attempts to influence their official actions. We do not believe that this scenario gives rise to a 9th Amendment claim.

## Counterclaim

■ Defendants counterclaim alleges that plaintiffs made false public statements about defendants in an effort to destroy defendants credibility, and that these false statements together with plaintiffs' mass resignation from council damaged defendants' reputation and denied them their constitutional rights as property owners in the borough in violation of the 1st and 14th Amendment and 42 U.S.C. § 1985, 1986 "and others." We do not believe that defendants" allegations are sufficient to state a federal cause of action. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Furthermore, both parties agree that defendants have a pending Pennsylvania state court action containing these same allegations in Canterbury Village, Inc. v. Edward Robinson at Civil Action No. A.D. 84–239, Butler County, PA. We believe that any rights of defendants can be fully litigated in that action, and we will dismiss the counterclaim along with the complaint.